**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
BEAUFORT DIVISION**

| | |
|---|---|
| Debra Dalton, ) | |
| ) | C/A No.  9:11-2862-CMC-BM |
| Plaintiff, ) | |
| ) | |
| v. ) | **ORDER** |
| ) | |
| Michael J. Astrue, ) | |
| Commissioner of Social Security Administration, ) | |
| ) | |
| Defendant. ) | |
| _____) | |

Through this action, Plaintiff seeks judicial review of the final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits ("DIB"). Plaintiff appealed pursuant to 42 U.S.C. § 405(g). The matter is currently before the court for review of the Report and Recommendation ("Report") of Magistrate Judge Bristow Marchant, made in accordance with 28 U.S.C. § 636(b)(1)(B) and Local Rules 73.02(B)(2)(a) and 83.VII.02, *et seq.*, D.S.C. The Report, filed on October 29, 2012, recommends that the decision of the Commissioner be affirmed. Dkt. No. 18. On November 16, 2012, Plaintiff filed objections to the Report. Dkt. No. 20. On November 30, 2012, the Commissioner filed a response to Plaintiff's objections. Dkt. No. 21. For reasons stated below, the court adopts the Report and affirms the decision of the Commissioner.

**STANDARD**

The Magistrate Judge makes only a recommendation to this court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with the court. *Mathews v. Weber*, 423 U.S. 261 (1976). The court is charged with making a *de novo* determination of those portions of the Report to which specific objection is made, and the court may accept, reject,

1

or modify, in whole or in part, the recommendation of the Magistrate Judge, or recommit the matter to the Magistrate Judge with instructions.  28 U.S.C. § 636(b)(1).

The role of the federal judiciary in the administrative scheme established by the Social Security Act is a limited one.  Section 205(g) of the Act provides, "[t]he findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). "Substantial evidence has been defined innumerable times as more than a scintilla, but less than a preponderance." *Thomas v. Celebrezze,* 331 F.2d 541, 543 (4th Cir. 1964).  This standard precludes a *de novo* review of the factual circumstances that substitutes the court's findings for those of the Commissioner.  *Vitek v. Finch*, 438 F.2d 1157 (4th Cir. 1971).  The court must uphold the Commissioner's decision as long as it is supported by substantial evidence and reached through application of the correct legal standard. *Johnson v. Barnhart*, 434 F.3d 650 (4th Cir. 2005).  "From this it does not follow, however, that the findings of the administrative agency are to be mechanically accepted.  The statutorily granted right of review contemplates more than an uncritical rubber stamping of the administrative action." *Flack v. Cohen*, 413 F.2d 278, 279 (4th Cir. 1969). "[T]he courts must not abdicate their responsibility to give careful scrutiny to the whole record to assure that there is a sound foundation for the [Commissioner's] findings, and that his conclusion is rational."  *Vitek*, 438 F.2d at 1157-58.

## BACKGROUND

Plaintiff applied for DIB, alleging disability as of June 9, 2007, due to peripheral neuropathy, degenerative disc disease, fibromyalgia, depression, post-surgical knee pain, and carpal tunnel syndrome.  The ALJ conducted a hearing on April 21, 2010, and denied Plaintiff's claims in

a decision issued June 15, 2010.[1]  The Appeals Council denied Plaintiff's request for review, thus making the ALJ's determination the final decision of the Commissioner.  Plaintiff filed this action on October 21, 2011.  Dkt. No. 1.

## DISCUSSION

The Magistrate Judge recommends that the court affirm the Commissioner's decision because it is supported by substantial evidence.  Plaintiff objects to the Report, arguing that the Magistrate Judged erred (1) in finding that the ALJ properly considered and incorporated Dr. Ruffing's findings into the residual functional capacity ("RFC") determination, and (2) in finding that the ALJ's hypothetical to the Vocational Expert included all of the limitations found by the ALJ and that the hypothetical was supported by substantial evidence.  Dkt. No. 20.

**Dr. Ruffing.**   The bulk of Plaintiff's objections concern the ALJ's treatment of Dr. Ruffing's opinion.  Dr. Ruffing's opinion as to Plaintiff's capacities is as follows:

> CAPACITIES: She is able to understand and respond to the spoken word.  She was able to focus and attend inconsistently, as a result of the level of her emotional distress.  She does demonstrate some emotional instability and difficulty regarding her emotions.  She seems cognitively able to perform repetitive tasks and understand, remember, and carry out detailed instructions.  She may struggle to manage the concentration, persistence, and pace required in a typical work environment as a result of her emotional stay.  She does appear capable of managing her finances, if awarded benefits.

Tr. 295.

Plaintiff argues that the Magistrate Judge, as well as the ALJ, ignored a portion of Dr. Ruffing's opinion, particularly that he found "[s]he was able to focus and attend inconsistently, as a result of the level of her emotional distress."  Tr. 295.  However, the court agrees with the

---

[1] The ALJ found that Plaintiff has the following severe impairments:  diabetes mellitus, fibromyalgia, arthritis of the cervical and lumbar spine, carpal tunnel syndrome, and depression.

Magistrate Judge that although the ALJ did not quote that specific sentence of Dr. Ruffing's opinion, the ALJ adequately discussed Dr. Ruffing's opinion as to what work-related result may follow from that finding: "She may struggle to manage the concentration, persistence, and pace required in a typical work environment as a result of her emotion stay [*sic*]." Tr. 295. The ALJ explained:

> I note that Dr. Ruffing indicates that the claimant may struggle with concentration, persistence, and pace (Exhibit 5F). However, I have accommodated for that opinion by limiting the claimant to work involving simple, repetitive, routine tasks requiring attention and concentration for 2 hours [*sic*] segments.

Tr. 23. The court, therefore, rejects Plaintiff's objection that the ALJ failed to consider the entirety of Dr. Ruffing's opinion.

Plaintiff also argues that the limitation of work involving simple, repetitive, routine tasks requiring attention and concentration to 2-hour segments in the RFC was a "manufactured limitation" wherein the ALJ "substitut[ed] his limitation for the doctors." Dkt. No. 20 at 3. Dr. Ruffing did not offer an opinion as to Plaintiff's RFC. The ALJ gave great weight to two state agency medical consultants, both of whom found moderate difficulties in maintaining social functioning and concentration, persistence, or pace. One of those consultants specifically opined that Plaintiff could "attend to and perform simple tasks without special supervision for at least 2-hour periods." Tr. 349. The court rejects Plaintiff's objection that the ALJ "manufactured" a limitation that was not supported by substantial evidence.

Next, Plaintiff argues that, when posed a hypothetical of Dr. Ruffing's opinion, the Vocational Expert found that Plaintiff would not be able to work. This is simply not true. The cited hypothetical posed to the Vocational Expert was:

> Q   Okay. Another hypothetical, assume that we have an individual of my client's age, education, with the past relevant work and she has impaired cognitive functioning including an inconsistent ability to focus and pay attention, as well as

4

> problems managing concentration, persistence, and pace which is hard in a typical work environment, would this individual be able to do my client's past work?
>
> A  No, ma'am, she would not be able to do her previous work or any other substantial gainful work.

Tr. 50-51. Dr. Ruffing found that Plaintiff was "cognitively able to perform repetitive tasks and understand, remember, and carry out detailed instructions." The hypothetical posed by Plaintiff's representative assumed "she has *impaired* cognitive functioning." Tr. 51 (emphasis added). The court, therefore, rejects Plaintiff's objection that the Vocational Expert found Plaintiff to be precluded from all work when presented Dr. Ruffing's opinion as a hypothetical.

Plaintiff also argues that the ALJ and Magistrate Judge misread Dr. Ruffing's opinion. Plaintiff argues that Dr. Ruffing found (1) that Plaintiff was "cognitively able to perform repetitive tasks," (2) but that her emotional status precludes her from doing repetitive work. Again, turning to the language of Dr. Ruffing's opinion, he stated:

> She seems cognitively able to perform repetitive tasks and understand, remember, and carry out detailed instructions. She may struggle to manage the concentration, persistence, and pace required in a typical work environment as a result of her emotional stay.

Tr. 295. First, the court notes that Dr. Ruffing did not definitively state that Plaintiff's emotional status precludes all work. Rather, Dr. Ruffing found that Plaintiff "*may* struggle to manage the concentration, persistence, and pace required in a typical work environment as a result of her emotional" status. Second, the ALJ acknowledged Dr. Ruffing's opinion as to the effect of her emotional status on work, and provided a limitation in her RFC for "simple, repetitive, routine tasks requiring attention and concentration" to "2 hours [*sic*] segments." The ALJ's decision indicates that he understood that Dr. Ruffing opined that Plaintiff had the cognitive ability to perform repetitive tasks but that her emotional status limited her ability. Although Plaintiff may not agree

with the ALJ's limitation based on Dr. Ruffing's opinion, she has failed to point to any other evidence that indicates she is unable to perform simple, repetitive, routine tasks requiring concentration in 2-hour segments. The court, therefore, rejects Plaintiff's objection because the ALJ properly considered Dr. Ruffing's opinion.

**RFC.**  Plaintiff objects to the Magistrate Judge's finding that the ALJ considered all impairments he found supported by the medical evidence and that the Plaintiff's RFC was supported by substantial evidence.  Specifically, Plaintiff argues that the ALJ failed to include limitations for Plaintiff's "well-documented neuropathy," "significant problems with concentration and attention," and "status post bilateral knee surgery."  Dkt. No. 20 at 10.  The court finds that the ALJ did consider Plaintiff's limitations as to concentration and attention difficulties in her RFC:  "Mentally, the claimant is capable of maintaining the concentration and attention to perform simple, repetitive, routine tasks for 2 hours [*sic*] segments . . . ."  Tr. 21.  Plaintiff has not identified any evidence related to Plaintiff's concentration and attention that was not considered by the ALJ.  Similarly, Plaintiff has not identified any further limitations based on Plaintiffs "well-document neuropathy." The ALJ explained that Plaintiff had "mild peripheral neuropathy," and that she took medications to "ease her pain and control her neuropathy."  Tr. 22.  The ALJ found that "there is nothing in the record which would suggest that the medications are not helping and that the claimant would not be able to perform light work as described above." *Id.*  The court, therefore, finds that the ALJ properly considered Plaintiff's neuropathy and determined no limitation was necessary.

As to Plaintiff's "status post bilateral knee surgery," Plaintiff has not identified anything in the record to suggest that Plaintiff suffers any work limitations beyond the RFC.  At the hearing, Plaintiff made no complaints about her knees, and only referred to her legs getting tired after

6

standing for 20 minutes. The medical record indicates that Plaintiff had surgery on her right knee on June 13, 2007 and on her left knee on September 12, 2007. Tr. 214, 221. The treatment notes from the first surgery indicate that Plaintiff "tolerated the procedure well and returned to the recovery room in good condition." Tr. 215. Notes from follow-up visits indicate that on July 2, 2007, "she is improving" (Tr. 217); on July 16, 2007, "patient is noticing improvement from the first day I saw her" (Tr. 218); and on September 6, 2007, "she states that the surgery helped her 99% better" (Tr. 220). Based on the success of her first surgery on her right knee, Plaintiff decided to have the surgery on her left knee. Again, the notes from the second surgery indicate that she "tolerated the procedure well and returned to the recovery room in good condition." Tr. 222. On October 19, 2007, follow-up notes indicate that she had full range of motion in both knees, and that she stated "the surgery has helped her approximately 80% to 90% on both of her knees. Tr. 225. On November 2, 2007, Plaintiff stated "that as far as her knees are concerned that has been helped mostly by the surgery." Tr. 229.

Plaintiff cites to Dr. Machimada's treatment notes from July 23, 2009, in which she complained of "swelling in her ankles as well as her knees with associated pain worse in her knees but no warmth or redness in her knees." Tr. 451. Upon physical exam, Dr. Machimada found that Plaintiff's knees had "no evidence of synovitis" (joint swelling). Subsequent treatment notes with Dr. Machimada show that Plaintiff did not make any additional complaints about her knees.[2] Based on Plaintiff's lack of complaints about her knees to her doctors and at the administrative hearing,

---

[2] When Plaintiff originally filed for disability, she described her knee surgeries as due to arthritis. Tr. 131. On August 26, 2008, Plaintiff reported that she experienced "back and knee pain due to peripheral neuropathy." Tr. 161. The ALJ found that "the claimant requires medication to ease her pain and control her neuropathy . . . [and] there is nothing in the record which would suggest that the medications are not helping." Tr. 22.

7

and the evidence indicating successful knee surgery on both knees in 2007, the court concludes that substantial evidence supports the ALJ's decision not to include a limitation in Plaintiff's RFC based on any knee problems.

## CONCLUSION

For the reasons set forth above, the court adopts the Report and Recommendation of the Magistrate Judge and affirms the decision of the Commissioner.

**IT IS SO ORDERED.**

S/ Cameron McGowan Currie<br>
CAMERON MCGOWAN CURRIE<br>
UNITED STATES DISTRICT JUDGE

Columbia, South Carolina
February 11, 2013